Mercado v. The Secretary Okay, um, Mr. DeRushers? Yes. May I approach? Yes, please. May it please the Court, Opposing Counsel. My name is Christopher DeRushy, and I represent... I apologize for mispronouncing your name. Oh, it's okay. I represent Mr. Louis Angel Mercado, who is the appellant in this case. This case came off a 2254 COA, which essentially asked if prejudice should be presumed when defense counsel fails to submit an appellate brief in opposition to a state appeal. And in this particular case, because this is on review of a state habeas decision, I've got to ask, which decision are we reviewing? So, after there was a failure to file the brief, counsel, appointed counsel, who had mistakenly thought he had withdrawn, filed a motion for rehearing and made the very argument we're here to talk about, right? Correct. And that was rejected. Then the defender, public defender, was appointed, who filed a motion to recall the mandate, again made the same argument, again rejected. Then there was a state habeas petition filed in the DCA, same argument, was presented there, right? Yes. Again rejected. Then there was a second habeas petition, as I understand it, right? Yes. Same argument. It was rejected. Which decision am I reviewing? I think, really, if the court's inclined to grant relief, the relief is really... I'm not saying the court is inclined to grant relief. I'm trying to determine which decision we're reviewing. Because the statute refers to a decision of the state court that we have to evaluate whether that decision was contrary to or an unreasonable application of clearly established federal law as determined by the Supreme Court, right? Correct. Which decision am I evaluating for that? Timing can matter. I just want to know what's your position on it. It's really tough, because if you go results-oriented, the case that really needs to be heard again is the initial appeal, where counsel no-showed, no-briefed. Yes. All the arguments that were made in the motion for rehearing, motion to recall the mandate, first habeas petition, second habeas decision, are all focused on that. Right. So if you go results-oriented, you're reviewing the first appeal as... Well, it's really the state appeal. But if you're also looking at it from another context, you're really going the 3-8-50 proceedings, because that's where you're really saying, hey, look, the appellate court messed up the first time by allowing this crime here, no-show, no-brief, just let this guy rot without counsel and just decided this case on their own with just a state brief, and how'd he do? So you can look at it a couple of different ways. Which do you contend is the correct way to look at it? I think it's a combination of both. But here's the thing, I think really... Only be one. The statute, you know, I thought I was going to just start with something simple. I'm a simple man. The statute refers to a decision. I'm just trying to figure out which one it is. I think ultimately for the review purpose today, it would be the first state habeas decision. Okay, great. Thank you very much. That makes a lot of sense to me. But here's the problem, it seems to me. You've got some circuit precedent from other circuits that support your view that that would be presumptively prejudicial. But the Supreme Court has never so held. And it seems to me that when you're talking about an appellee's brief, and it's still the state's burden as appellant to establish reversible error for what under Florida law is a presumptively correct decision, that we're in a materially different position than anything the Supreme Court has actually decided in terms of holding. And a state court could reasonably conclude that that is not chronic error. It's subject to Strickland prejudice. I might not agree with that if I were doing it de novo, but that isn't the standard. So what do you say about that? Well, I would suggest that in 2254 review under Strickland, we use Strickland as the established Supreme Court precedent that allows people sometimes to argue their attorney didn't do their job right. Chronic is basically an extension of Strickland. Basically, what happens if counsel doesn't do his job, period, actually or constructively? There's a complete absence of counsel. Of course, I mean, counsel did do something here. Counsel filed a motion for rehearing. And there was a motion to recall a mandate, which sounds a lot like negligence. That sounds real Stricklandish. So it seems to me it supports the idea that it could at least be reasonable for the state courts to conclude that this is not chronic error. And the Supreme Court has never held that a defense counsel's failure to file an aptly brief in response to a state appeal is chronic error. That it's presumptively prejudicial. Right. However, they did rule chronic. Pardon? They did actually issue chronic. Yes, which was not an instance of this kind of. It was a standard appellate process idea. But at the same token, this is basically, number one, it is an extension of chronic, which a lot of times we're here on 2254, so extensions of Strickland. Does Strickland apply for bias evidence? And here's the bias evidence. Well, the Supreme Court's never ruled on that bias evidence ever, so why shouldn't we just flush that one, too? Thank you for accepting the appointment, by the way. So this is the issue that I have. It seems like chronic is actually distinguishable. And I'm not saying that this would necessarily be what we would say on de novo review. Chronic was about a situation where you basically forewent your right to appeal from your conviction because your lawyer didn't show up. He's not there to appeal. We have an Anders situation that covers that. We have all sorts of law about making sure that you have that right to appeal from your conviction. Where here, you've won. You, the defendant, have won, and the state is appealing. And in all sorts of situations, appellees decide not to file briefs or they decide, you know, that it's not worth their time to respond. It doesn't seem like you've got apples to apples comparison between, you know, the defendant sort of foregoing his own right to appeal because he doesn't have counsel versus what we have here, where really the defendant just forewent his ability to file a brief in response to the state's appeal. What do you say about that rationale to distinguish this situation from a more chronic-like situation of you just don't get to appeal because your lawyer didn't show up? Right. Well, number one, we have the 2003 Goebel case. Fifth DCA. Same DCA. Same. You don't file an answer brief on a state appeal. It's 3850. This should never have happened. But then you also have the State Attorney's Office. Why didn't they do that here, though, I guess? I mean, if that's the rule in Florida, then, you know. Who knows? Right. It just seems. I hate to say this. Well, maybe they looked at it and said it didn't make a difference. Because they were looking at it from a Strickland perspective. Well, the difficulty was they were looking at it. Because we would, no matter what you would have argued, we would have said, it's so clear that the district court was wrong to prevent, to prohibit retrial based on double jeopardy. That isn't, that's entirely possible, right? Well, and I think they were looking at it from a one brief perspective. Because there's one sentence from the actual Mercado case. The sole issue we address here is whether the state's conduct was intended to provoke Mr. Mercado into requesting a mistrial. We conclude that the trial court's findings are not supported by the evidence. This was not a legal ruling. It was a factual ruling. Who knows what would have happened. But the record is whatever it is. You know, you could look at it and say, okay, I've got the entire record. I've got what the district court said was the basis for that intentional misconduct. Record doesn't support that. Period. Oh, of course. But here's the thing. Who knows what would have happened. This is Thomas, this is Thomas V. O'Leary all over again. Who knows what would have happened if someone had actually submitted a brief and argued the facts. Well, it seems to me, it seems to me that it would be entirely reasonable for an appellate court to look at it and say, like, there's no argument they could have made that would convince me on this record that that was intentional misconduct. And that bars retrial based on double jeopardy. You could look at it from a requirement that there is a showing, there has to be a showing of prejudice, that it's not presumptively prejudicial. I mean, the argument you're making, who knows, sounds a lot like, well, maybe there was prejudice. But that's not the same thing as chronic, which is presumptively prejudicial. Oh, it was presumptively prejudicial. No show, no brief. This is essentially, when you look at the pattern of the Seventh Circuit case and Thomas V. O'Leary, it's basically the same pattern all over again. You've got a no show, no brief. Then they rule on factual issues. And then they try to come back and, oh, we need to do a brief, and it's denied. And then the Seventh Circuit comes back and says, number one, we have no clue what would have happened. Because they do harmless error analysis in there. And they say anything having two briefs instead of one, we don't know what the result is. Chronic, though, chronic would preclude harmless error analysis. Oh, yes. But the Seventh Circuit did harmless error just in case. Just to show that even with harmless error analysis, this thing is going to happen. Yes, but the argument we have here is that it was chronic error. Yes, and it was. Simply put. And I hope I'm not. We appreciate it. You've got three minutes. Let's hear from Mr. Pallas. May it please the Court. My name is Richard Pallas. I represent Appellees, the Secretary, the Attorney General in the State of Florida. Prejudice here is controlled by Strickland. It is not controlled by chronic. That's really not the argument, is it? I mean, the issue for us is, is it an unreasonable application of clearly established federal law as determined by the Supreme Court? That's correct. For the State Court to conclude it's not chronic. That's correct, Your Honor. Under the AEDPA standard. We might very well think that it is chronic error. But it doesn't matter what we think. The question is whether it's an unreasonable application. It's reasonable for a State court to conclude it's not chronic. That's correct, Your Honor. This was a reasonable interpretation by the State courts when they denied the rule 9141 subdivision D petition alleging ineffective assistance of appellate counsel for not filing the brief when chronic was first raised in the first place. This comes about as close as you can come to. Because the Supreme Court actually cites in a footnote as an example of what circuit courts have ruled. A Seventh Circuit case that involved failure to file an appellee's brief in a State appeal. That is correct, Your Honor. I'll grant you that. I don't think that makes it holding. That is correct. But it comes as close as anything could, doesn't it? Certainly, Your Honor, I can see how it comes close. But as this Court has observed over and over again in Dorville and I believe the Rameron case cited within that. Even the Supreme Court has told us DICTA doesn't count. It has to be holding. DICTA does not count. A footnote naming a Seventh Circuit opinion would not count here. And I think it's important that we can't find that this is an unreasonable application or contrary to clearly established Federal law, in this case chronic and by its extension pension is because appeals are a closed universe, Your Honor. When we have an appeal, we have a finite record. We have a finite amount of law that can be cited. Under your State law, it's presumptively a correct decision. That's correct, Your Honor. It's the appellant's burden to establish the error. It is the appellant's burden. Appellant not only has to show prejudicial error, appellant also has to file a brief. It does not say in our statutes that appellee has to necessarily file a brief because they don't have the presumption there. Had this been the defendant's appeal and there had been no filing of a brief, that's a different matter. That would be presumptively prejudicial. Your Honor, that's a course of a different color there. That is clearly established law, I believe, under Penson when a defendant has initiated an appeal, which is almost always after a judgment and sentence has been rendered against that defendant. And I think that while we've already discussed how appeals are different than the moving parts of a trial as assessed in chronic, given that in trial we have cross-examination, we have the selection of the jury and argument, whether or not you're going to object to everything or only object in ways that you think are most appropriate for the particular circumstance of that case. On top of that, we get into actual defense appeals. Liberty interest has been revoked for these defendants most of the time except in situations of supersedious bond, but it still hangs over them. They need the counsel in the Penson progeny of chronic because of the fact that if nothing is done on that appeal, whether as found in Smith v. Robbins, a notice of appeal isn't filed at all, then we have nothing to challenge that particular liberty interest. But here it was the denial of essentially a motion to dismiss, not in those words, but with the effect of a motion to dismiss, after the defendant already had a trial almost to the very end where two counts were removed. In those situations, the same evidence would likely have come in. Of course, rulings changed on the second successor judge after retrial. But in this particular circumstance, I don't believe Thomas v. O'Leary or the Fields v. Bagley cases, while this court is not at . . . Is the decision denying the first habeas petition? That is correct, Your Honor. That first habeas petition is the first time that chronic was raised. Chronic was, of course, not raised in the motion for rehearing. The motion for rehearing was strictly about counsel trying to move for the Office of the Public Defender to assume the appeal, as well as stating that they never received the appeal, despite what the state then asserted in its response. And, of course, what is within the actual appendix here. I think that is when this all kick-started. By all accounts, the motion for rehearing, which is something authorized under our Florida Procedure 9330, that could have been raised there as well and stated, we have certain . . . how would you say? We have certain standards of review that are normally supposed to go against the state in these state appeals. That said, the state cites at the very beginning of its initial brief in the argument section that this is an abusive discretion standard. While we don't, of course, talk about common substantial evidence, the key parts of this record is, of course, the successor judge stating, I believe the original trial court judge already made these factual findings. And, of course, going back to the actual branding of mistrial and then the flirting with contempt proceedings section, the judge said, I am not making any rulings on a motion to dismiss or any motions at that time. You may file something. And only stated, I may find it was intentional. So, the successor judge, if anything, misunderstood what was stated. But that's, of course, the Oregon v. Kennedy issue, which is not here within this court's COA. But that is why the defendant would not be able to show prejudice under the Strickland standard, of course. But, again, taking in that this is a . . . this appeal is under a closed universe without moving parts of a trial, it is not an unreasonable application of federal law or contrary to federal law, established federal law by the United States Supreme Court, that the State courts below elected not to go with Cronick and stated that Strickland prejudice was controlling here. If this Court does not have any other questions, I will rely on briefs and I ask that you affirm. Okay. Thank you. Thank you, Your Honor. Counsel, you've saved a few minutes. Thank you. I'll try to be brief. In rebuttal, the need for counsel in this case actually stems from the Sixth Amendment, not from the Fourteenth Amendment in Douglas v. California, which is important to remember because when we have a no-show, no-brief, even in a state case, that's a critical stage proceeding because the government is here trying to take away his liberty interest. He'd won. He was at liberty. He had a double jeopardy bar. He was out. And now here comes the state wanting to deprive him of his liberty interest. This is a critical stage proceeding. He needed counsel. And this was, in essence, a fundamental error. Okay? This is as fundamental as it gets when you wind up going to an appeal with no counsel at a critical stage proceeding. And there's tons of Supreme Court precedent that tells us, you go to a critical stage proceeding with no counsel, that is, that's error. You go back and you try that all over again. That's the way that works. So our position is, there's tons of clearly established Supreme Court precedent, not just chronic, but everything under the Sixth Amendment right to counsel that tells us that when you have a critical stage proceeding like this and you don't have a lawyer and you're there all by yourself, that is an automatic Sixth Amendment violation. We go back and do it all over again. Thank you. I think we understand your argument. Thank you. We will be in recess until tomorrow. All rise.